**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

U.S. Bank National Association,                           No. 26-cv-2774 (KMM/JFD)

        Plaintiff,

v.                                                                            **ORDER**

Hao Li,

        Defendant.

---

Plaintiff U.S. Bank National Association ("U.S. Bank") brought this action against Defendant Hao Li, a former employee, alleging that he is in violation of a Confidentiality and Non-Solicitation Agreement. The matter is before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, in which U.S. Bank seeks to enjoin Mr. Li from violating the agreement. (Dkt. 2.) For the reasons discussed below, the Motion is granted in part and denied in part.

**BACKGROUND**

Mr. Li began working for U.S. Bank in April 2020. (Dkt. 1 ¶ 12.) As a condition of his employment, Mr. Li signed a Confidentiality and Non-Solicitation Agreement (CNSA) that stated in relevant part, "I agree that during the term of my employment with U.S. Bank, and for a period of one year thereafter, I will not, directly or indirectly, encourage, induce or entice any employee of U.S. Bank to leave U.S. Bank's employment." (*Id.* ¶¶ 13–14; Dkt. 1-1 (CNSA) ¶ 8.) In doing so, Mr. Li acknowledged that the non-solicitation provision was "necessary to protect the business and goodwill of U.S. Bank . . . [and] reasonable for

1

such purposes." (CNSA ¶ 11.) By signing the agreement, Mr. Li also "acknowledge[d] that the breach of any provision of [the CNSA] shall result in substantial, irreparable injury and damage to U.S. Bank, that there is no adequate remedy at law for such breach" and provided his "consent to the issuance of a temporary restraining order or preliminary injunction by a court to prohibit and enjoin the breach of any provision of [the CNSA]." (*Id.*) While at U.S. Bank, Mr. Li's coworkers included Peter Chin and William Chow. (*See* Dkt. 1 ¶¶ 34, 55.)

On December 19, 2025, Mr. Li resigned from U.S. Bank and subsequently joined Gen II Fund Services, LLC ("Gen II"). (*Id.* ¶¶ 17–18.) The record reflects that he communicated with Mr. Chin and Mr. Chow about them leaving U.S. Bank both before and after his resignation. For example,[1] in August 2025, while telling Mr. Chow of his plan to leave U.S. Bank, Mr. Li "asked [Mr. Chin] to join him when he left[.]" (Dkt. 5 (Chin Decl.) ¶ 9.) Then, a few days after Mr. Li resigned, he sent text messages to Mr. Chin saying, "I do need [you] and your boys in q1," and "Exactly that's why I need you guys so I don't have to be a slave[.]" (Dkt. 25-5 at 3–4; *see also* Dkt. 25 (Second Chin Decl.) ¶ 11.) These messages conveyed that Mr. Li wanted Mr. Chin to join him at Gen II in the first quarter of 2026 in anticipation of a busy period at work. (Second Chin Decl. ¶ 11.) And in early 2026, Mr. Li told Mr. Chow to let him know if Mr. Chow "wanted to join Gen II in the next couple of months . . . and that he would hire [Mr. Chow]" if he did. (Dkt. 6 (Chow

---

[1] U.S. Bank alleges other instances of Mr. Li soliciting U.S. Bank employees, although the Court need not recount them all here. (*See, e.g.*, Dkt. 6 ¶ 6; Dkt. 24 (Second Decl. of William Chow) ¶ 6; Dkt. 25 ¶ 12.)

Decl.) ¶ 5.) U.S. Bank alleges that Mr. Li has engaged in similar communications with other U.S. Bank employees. (*See id.* 6 ¶ 7.)

In January and again in April 2026, U.S. Bank sent Mr. Li letters reminding him "of his obligations to comply with [the] CNSA, including to not solicit any U.S. Bank employees to leave their employment." (Dkt. 1 ¶¶ 24, 27; Dkt. 1-2 (first letter); Dkt. 1-4 (second letter).) Also in April 2026, U.S. Bank sent Gen II a similar letter "to provide further notice of the non-solicitation provisions in the departed employees' employment agreements, and enclosed courtesy copies of those agreements[.]" (Dkt. 1 ¶ 26; Dkt. 1-3 (letter).)

On May 27, 2026, U.S. Bank brought this action against Mr. Li, alleging that he was in violation of the CNSA, that U.S. Bank's efforts to stop his solicitation of other U.S. Bank employees had been unsuccessful, and that U.S. Bank would suffer irreparable harm as a result of Mr. Li's conduct. (*See* Dkt. 1 ¶¶ 24–28, 46, 60, 62; *id.* at 6 ("U.S. Bank's Efforts to Halt Mr. Li's and Gen II's Solicitation Efforts")).) That same day, U.S. Bank moved for a temporary restraining order and preliminary injunction seeking to enjoin "[Mr. Li] and all those working in concert with him from directly or indirectly encouraging, inducing, or enticing any current employee of U.S. Bank to terminate his or her employment with U.S. Bank." (Dkt. 2 at 1.) The Motion has been fully briefed.[2]

---

[2] By a text-only Order issued on May 29, 2026, the Court scheduled a status conference for June 2, 2026 to afford Mr. Li, who was unrepresented at the time, an opportunity to retain counsel. (Dkt. 11.) At the status conference, the Court "ordered the parties to immediately meet and confer about an agreement regarding the requested injunctive relief" and "file joint or competing letters informing the Court of any agreement reached or a proposed briefing schedule for the Motion." (Dkt. 14.) Because the parties

## ANALYSIS

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "Its 'primary function is to preserve the status quo until, upon final hearing, a court may grant full, effective relief.'" *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1342 (8th Cir. 2024) (quoting *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984)) (cleaned up). When evaluating whether such relief is warranted, a district court considers the following factors: (1) "the probability that the movant will succeed on the merits"; (2) "the threat of irreparable harm to the movant"; (3) "the balance between this harm and the injury that the injunction will inflict on other parties"; and (4) "the public interest." *Jackson v. Macalaster Coll.*, 169 F. Supp. 3d 918, 921 (D. Minn. 2016) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981)). Each is discussed in turn.

## I.    Likelihood of Success on the Merits

"The likelihood of success on the merits is the most important of the *Dataphase* factors." *Miller v. Honkamp Krueger Fin. Servs., Inc.*, 9 F.4th 1011, 1014 (8th Cir. 2021) (quotation omitted). To establish this factor, "a movant must show that it has at least a 'fair chance of prevailing.'" *Id.* (quoting *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013)).

At this preliminary stage, U.S. Bank has shown it has a "fair chance" of prevailing on at least some of its claims against Mr. Li. At a minimum, the text messages in which Mr. Li told Mr. Chin, "I do need [you] and your boys in q1," and "Exactly that's why I

---

were unable to propose a joint briefing schedule, the Court issued a briefing schedule (Dkt. 17), and the parties timely filed their briefs (Dkts. 19, 22).

need you guys so I don't have to be a slave," constitute clear violations of the CNSA. (Dkt. 25-5 at 3–4; *see also* Second Chin Decl. ¶ 11.) Mr. Li's communications with Mr. Chow also support an inference that Mr. Li engaged in prohibited solicitation. (*See* Second Chow Decl. ¶¶ 4–6; *see also* Dkt. 24-1.)

In addition to challenging whether there was a breach of the agreement, U.S. Bank's claims and Mr. Li's defenses to them turn on the enforceability of the CNSA. (*See* Dkt. 1 at 11–13.) While post-employment agreements that limit competition are generally disfavored in Minnesota,[3] they are nevertheless "enforceable if they serve a legitimate employer interest and are not broader than necessary to protect this interest." *Cf. Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 361 (Minn. 1998). Minnesota recognizes that "[e]mployers have a legitimate interest in protecting themselves against 'the deflection of trade or customers by the employee by means of the opportunity which the employment has given him.'" *Webb Pub. Co. v. Fosshage*, 426 N.W.2d 445, 450 (Minn. 1988) (quoting *Bennett v. Storz Broadcasting Co.*, 134 N.W.2d 892, 898 (1965)).

To the extent that Mr. Li's alleged solicitation of his former colleagues has targeted a specific division within U.S. Bank that services key clients, and his actions have jeopardized U.S. Bank's relationships with those clients, the CNSA serves to protect U.S. Bank's legitimate business interest in protecting such relationships. (*See* Dkt. 1 ¶¶ 42–44.)

---

[3] Although Mr. Li resides in New York, and the record suggests that Gen II is a New York company, the parties agree that Mr. Li's CNSA is governed by Minnesota law pursuant to a choice-of-law provision stating that "[t]he enforceability and interpretation of [the CNSA] shall be governed by the laws of the State of Minnesota[.]" (Dkt. 4 at 11 n.1 (quoting CNSA ¶ 12); Dkt. 19 at 15 n.3.) Therefore, the Court finds it unnecessary to conduct a choice-of-law analysis.

5

Furthermore, the restrictions in the CNSA that are at issue in this injunction appear to be reasonable. The CNSA restricts Mr. Li from "directly or indirectly, encourag[ing], induc[ing] or entic[ing] any employee of U.S. Bank to leave U.S. Bank's employment" for one year after his departure from U.S. Bank. (CNSA ¶ 8.) Courts have upheld one-year restrictions on a former employee's ability to compete with or solicit from their former employer. *See, e.g.*, *Hedberg v. State Farm Mut. Auto Ins. Co.*, 350 F.2d 924, 932–33 (8th Cir. 1965) (upholding non-solicitation provision with one-year duration as reasonable because it served the limited purpose of preventing defendant using customer contacts he made while working for former-employer plaintiff); *Softchoice, Inc. v. Schmidt*, 763 N.W.2d 660, 670 (Minn. Ct. App. 2009) (holding a non-solicitation period of one year to be reasonable "[g]iven the amount of time it takes to develop a customer relationship").

Critically, the Court's preliminary injunction enforces only the provision of the agreement that prohibits Mr. Li from soliciting former colleagues to leave U.S. Bank, and not other limitations on post-employment conduct. Although U.S. Bank sought a broader injunction that enforces the entire CNSA and would require Mr. Li to take additional steps to document his compliance with other provisions of the CNSA, the Court's limited grant of preliminary injunctive relief is tailored to the showing U.S. Bank has made—specifically, that Mr. Li has repeatedly solicited current U.S. Bank employees to leave their employer.

Mr. Li argues that both the CNSA as a whole and the provision at issue here are unreasonably overbroad, and thus unenforceable, and he raises several hypotheticals in which U.S. Bank could seek to improperly enforce the CNSA against him. (Dkt. 19 at 18–

19 (citing *Marco Techs., LLC v. Midkiff*, No. 73-CV-19-6757, 2021 WL 6200956, at \*17 (Minn. Dist. Ct. Oct. 28, 2021)).) As one example, Mr. Li claims that he could be held liable for violating the CNSA if he texted, "'I'm so happy at Gen II!' . . . to a friend who was not employed by U.S. Bank, and that friend forwarded Mr. Li's message to a U.S. Bank employee who then decided to quit[.]" (Dkt. 19 at 26.) But such a hypothetical is far from the conduct at issue here, like Mr. Li's text messages to Mr. Chin. Given that U.S. Bank does not seek an injunction based on conduct like that Mr. Li hypothesizes about, nor seek to enforce its provisions so broadly, the Court is unpersuaded that evaluation of such extreme hypotheticals is useful at this stage.

The Court reiterates that it is not making an ultimate determination regarding whether U.S. Bank has shown that Mr. Li breached the CNSA, nor finally assessing the enforceability of the CNSA. The Court concludes only that, at this preliminary stage, U.S. Bank has shown it has a fair chance of prevailing on the merits of its claims regarding Mr. Li's attempts to recruit his former coworkers away from his former employer.

## II.      Threat of Irreparable Harm

A showing of irreparable harm is also necessary for a court to issue injunctive relief. *See Novus Franchising Inc. v. Dawson*, 725 F.3d 885, 893 (8th Cir. 2013) ("[A] failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction[.]" (quotation omitted)). "To demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Denali Summit, LLC v. Union Elec. Co.*, 158 F.4th 896, 899 (8th Cir. 2025) (cleaned up). If an injury can be redressed by an award of money

damages after a trial, then it does not constitute irreparable harm. *See Novus Franchising, Inc.*, 725 F.3d at 895.

Here, U.S. Bank has credibly alleged that Mr. Li's targeted solicitation from one of U.S. Bank's specialized divisions has "strained relationships with U.S. Bank's significant clients" and "tarnished U.S. Bank's goodwill and has placed it in jeopardy[.]" (Chin Decl. ¶ 17.) Courts recognize that such harms are irreparable. *Benfield, Inc. v. Moline*, 351 F. Supp. 2d 911, 918 (D. Minn. 2004) (explaining that the potential losses associated with a likelihood of "los[ing] valuable business relationships and good will . . . cannot be recouped through money damages"). While at U.S. Bank, Mr. Li "managed a team of approximately 115 employees" who serviced two franchise clients. (Dkt. 23 ¶ 12.) The primary team servicing one of those key clients, which Mr. Li previously managed, "lost 8 of its 22 employees . . . to Gen II," at a 36% attrition rate as compared to an expected 11% attrition rate for that division. (*Id.*) Moreover, Gen II has hired "the primary investor service, operations, and financial reporting contacts servicing the same franchise client" that Mr. Li's team oversaw. (*Id.*) While these alleged injuries may ultimately be attributable to something other than Mr. Li's conduct, the Court concludes that U.S. Bank has met its burden to show a threat of irreparable harm necessary for injunctive relief.

Mr. Li questions the imminent nature of the alleged harms, pointing to U.S. Bank's delay in seeking injunctive relief. (Dkt. 19 at 40–41.) While "delay alone may justify the denial of a preliminary injunction when the delay is inexplainable in light of a plaintiff's knowledge of the conduct of the defendant," *Novus Franchising Inc.*, 725 F.3d at 894, "the reasonableness of a delay is context dependent," *Ng v. Bd. of Regents of Univ. of Minn.*, 64

F.4th 992, 998 (8th Cir. 2023). And some delay here is understandable, given U.S. Bank's efforts to resolve this matter without litigation. As Mr. Li acknowledges, U.S. Bank sent him a letter in January 2026 reminding him of his obligations to not solicit any U.S. Bank employees to leave their employment and to notify any prospective employers of the CNSA. In the letter, U.S. Bank reiterated that it "fully expect[ed] [Mr. Li] to honor [those] obligations." (Dkt. 1-2 at 3; *see id.* at 2.) Then, in April 2026, after providing Mr. Li with an opportunity to stop his solicitation efforts, U.S. Bank sent two more letters, one to Mr. Li and one to Gen II. (Dkt. 1-4; Dkt. 1-3.) U.S. Bank initiated this action less than two months later. Under the circumstances, the Court finds that U.S. Bank's decision to wait two months after sending follow-up letters to Mr. Li and Gen II to conduct further investigation and to see if it could resolve the issue without the Court's intervention was reasonable, and does not undermine U.S. Bank's claim of urgency. (*See* Dkt. 22 at 26–27.)

The Court concludes that the threat-of-irreparable-harm factor also weighs in favor of issuing a preliminary injunction.

### III.    Balance of the Harms and the Public Interest

Finally, the Court must weigh the balance of the harms and consider the public interest. "[T]he key question is whether the movant's likely harm without a preliminary injunction exceeds the nonmovant's likely harm with a preliminary injunction in place." *Cigna Corp.*, 103 F.4th at 1347. This is a "tentative" balance that is intended "not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward." *Id.* (quoting *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017) (per curiam)).

Although U.S. Bank faces an imminent threat of irreparable harm, Mr. Li would suffer no harm from being enjoined from violating the CNSA because he is already contractually obligated to comply with its non-solicitation provisions. And the narrow scope of the injunction issued further mitigates any harm to Mr. Li. Therefore, the balance of the harms weigh in favor of a preliminary injunction. Furthermore, "the public has an interest in enforcing contracts[.]" *UBS Fin. Servs., Inc. v. Christenson*, No. 13-cv-1081 (MJD/JSM), 2013 WL 2145703, at *6 (D. Minn. May 15, 2013); *Cherne Indus., Inc. v. Grounds & Assocs., Inc.*, 278 N.W.2d 81, 94 (Minn. 1979) (noting "the public interest in preserving the ability of parties freely to enter contracts and to seek judicial enforcement of such contracts"). On balance, a consideration of the public interest and any harm to the parties favors the issuance of injunctive relief.

\* \* \*

In sum, the Court concludes that each of the *Dataphase* factors weighs in favor of granting in part U.S. Bank's Motion for injunctive relief.

## IV.   Bond

Having concluded that injunctive relief is appropriate, the Court briefly addresses the bond requirement of Federal Rule of Civil Procedure 65(c), which provides that "the movant [must] give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." U.S. Bank asks the Court to waive this requirement because "the [requested] injunction would place Mr. Li in the same position he is contractually obligated to remain" and not cause him to suffer any damages. (Dkt. 4 at 21.)

10

Because Mr. Li does not oppose this request (Dkt. 19 at 44 n.7 ("Should the Court find an injunction warranted [sic], Mr. Li does not object to the bank's request that it not be required to post a bond.")), the Court grants the waiver, *see Fantasysrus 2, L.L.C. v. City of East Grand Forks*, 881 F. Supp. 2d 1024, 1033 (D. Minn. 2012) (waiving the bond requirement of Rule 65(c) where the request for waiver was unopposed).

## ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 2) is **GRANTED in part and DENIED in part**;

2. For the duration of this litigation, Defendant Hao Li is **PRELIMINARILY ENJOINED** from directly or indirectly encouraging, inducing, or enticing any current employee of U.S. Bank National Association to terminate their employment with U.S. Bank; and

3. This ruling does not foreclose U.S. Bank's ability to seek additional preliminary injunctive relief if further violations of the CNSA arise.

**Let judgment be entered accordingly as to the preliminary injunction.**

Date: July 9, 2026

*s/Katherine M. Menendez*
Katherine M. Menendez
United States District Judge

11